UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| MARIA LEE KINSTLEY and KENNETH R. KINSTLEY,<br><br>　　　　　　Plaintiffs,<br><br>　　v.<br><br>CITY & COUNTY OF SAN FRANCISCO, et al,<br><br>　　　　　　Defendant. | No. C 07-2323-SBA<br><br>ORDER<br><br>[Docket Nos. 106, 120] |

　　　This matter is before the Court on Defendant Diane Kenny's motion for summary judgment. [Docket No. 106]. The Court, having considered the motion, Plaintiff's declaration in opposition, the reply brief, and Defendant's evidence, HEREBY DENIES the motion for summary judgment for the reasons discussed below.

## **BACKGROUND**

**I.　　Procedural Background.**

　　　This is a Section 1983 action for excessive force by an arresting police officer. The Complaint was filed by Plaintiffs Maria Lee Kinstley and Kenneth Kinstley on April 27, 2007. The events surrounding Mrs. Kinstley's arrest on April 29, 2005 form the basis of an excessive force claim against Defendant Diane Kenny.

　　　All state and federal claims – with the exception of Maria Lee Kinstley's excessive force claim – were dismissed on March 6, 2008. [Docket No. 35]. Defendants City and County of San Francisco and Kenny filed the instant motion for summary judgment on May 19, 2009, and noticed it for hearing on June 23, 2009. Plaintiff's opposition was due on or before June 2, 2009. No opposition was filed by June 2, 2009. An untimely "objection" to the motion was filed on June 23, 2009. It appears that Plaintiff intended to oppose the motion at the hearing, which date was continued to June 30, 2009, due to the unavailability of the Court. [Docket No. 120]. The

Court granted the Defendants' motion to strike the "objection" but provided the *pro se* plaintiff an additional five days in which to file an opposition.  Plaintiff was cautioned that the failure to properly support the opposition according to the requirements of Fed. R. Civ. P. 56 the Rule 56 could result in summary judgment in Defendant's favor.  Plaintiff was also warned that no further extensions of time would be granted without good cause.

On July 10, 2009, Plaintiff filed a declaration in opposition of the motion for summary judgment.  On July 17, 2009, Defendants filed a reply brief.  The Court, in its discretion, finds this matter suitable for resolution without oral argument.  *See* Fed.R.Civ.P. 78(b).

## II.     Factual Background.

The sole remaining claim in this action is Plaintiff Maria Lee Kinstley's excessive force claim against Diane Kenny, an investigator for the San Francisco District Attorney's Office. The evidence is drawn from the following sources: (1) Diane Kenny's sworn declaration; (2) Exhibit A to Kenny's Declaration, the Incident Report for April 29, 2005; (3) Maria Lee Kinstley's sworn declaration; and (4) Kenneth Kinstley's sworn declaration.  The Court has also received but not relied upon (1) the Declaration of Don S. Cameron, a putative expert in the use of force by police officers, in support of the motion for Summary Judgment and (2) inadmissible photographs attached to Plaintiff's declaration.

What emerges from the evidence are two starkly different versions of the arrest of Maria Lee Kinstley and the events leading up to and including the Plaintiff's fall down the stairs of her home.   In the Plaintiff's version of the events, she was upstairs in bed with her husband when the police arrived. Mr. Kinstley went downstairs to open the door while Mrs. Kinstley remained in bed.  He opened the door and screamed out her name, and she jumped out of bed and went toward the bedroom door.  Before she got to the bedroom door, a large woman's body in black charged towards her.  Mrs. Kinstley was not wearing clothes or her glasses.  She could not see who was charging her and screamed "Who are you?"  The woman was pointing a gun at Mrs. Kinstley.  The woman pulled Mrs. Kinstley down with great force and handcuffed her in the back while she was still unclothed, and then told her she was under arrest.  Plaintiff asked "Defendant Dianne [sic] Kenny" to let her put some clothes on and Kenny walked her to the closet, still handcuffed, and put clothes on the Plaintiff.  The defendant then said "Let's Go!" and

they proceeded toward the staircase.  At this time, Mrs. Kinstley requested her glasses, which were on the nightstand by the bed, but was refused.  She also saw her husband, but Kenny told her to move and then Plaintiff felt a push on her back and tremendous force falling forward.  Her head hit the handrail and she flew over the stairs.  She remembers hearing herself screaming and feeling a sharp pain above her right eye.  "After a while," she opened her eyes, saw the ceiling lights but did not hear any sound.  Later, when she was sitting in a police car, she felt something dripping into her eyes and was told it was blood, and that she was cut. [Maria Lee Kinstley Decl. ¶¶ 1-5].

Mr. Kinstley corroborates the Plaintiff's testimony to the extent that he attests he witnessed Kenny forcibly push his wife toward the stairs while she was in handcuffs.  He also repeatedly asked Kenny to give Mrs. Kinstley her glasses but Kenny refused.  He did not witness Mrs. Kinstley fall down the stairs because her body was out of his point of view, but he heard loud noises and screams, and immediately afterward heard two male voices from downstairs say "Oh Shit" and "Oh Fuck!."  When he was taken downstairs he saw his wife with a bruised and swollen eye and bleeding forehead, and he heard her accept medical attention that was offered by an officer. [Kenneth Kinstley Decl. ¶¶ 1-7].

Defendant Kenny's version of the arrest differs markedly.  She attests that on the evening of April 29, 2005, she and three other members of the San Francisco District Attorney's Office Investigations Unit and a Pleasant Hill police sergeant, went to 50 Mozden Lane in Pleasant Hill in order to execute felony arrest warrants on residents Kenneth and Maria Lee Kinstley.  Mr. Kinstley opened the front door.  When Kenny told him she was with the San Francisco District Attorney's Office, Mr. Kinstley clamped down on Kenny's hand, started to say "no" and "wait" while attempting to back into his residence.  Kenny and two other officers controlled his hands, and then handcuffed him, downstairs.  While they were handcuffing Mr. Kinstley, Kenny looked up and saw a woman peeking down from the stairway.  She recognized the woman as Maria Lee Kinstley from a "soundex photo" and followed her as she ran back upstairs.  Kenny yelled to her to stop, but Plaintiff ran into the bedroom and shut the door as Kenny yelled to keep the door open.  Kenny attests she followed Mrs. Kinstley into the bedroom, identified herself as police and told her she had an arrest warrant.  Mrs. Kinstley ran into a walk-in closet and closed the

door. Kenny opened the door and again told Kinstley that she was under arrest. Mrs. Kinstley had no clothes on and Kenny stood by as she got dressed, and then handcuffed her. Plaintiff struggled against the cuffs and repeatedly called out to her husband. Kenny guided Mrs. Kinstley out of the bedroom by her left arm and started down the carpeted stairs towards the lower level of the home. When Kenny was on the second step down from the top, they stopped abruptly. According to Kenny, Mrs. Kinstley pulled back very hard and her right leg was wrapped around the doorjamb to the bathroom door, which was adjacent to the top landing. Mrs. Kinstley was calling out and pulling back. When her leg came loose from the door, Mrs. Kinstley fell forward, which caused Kenny to fall as well. Kenny was pulled over to the wall and had to let go of Mrs. Kinstley. Mrs. Kinstley slid approximately six steps down to the landing at the bottom of the carpeted stairs. Kenny checked Mrs. Kinstley and determined she was conscious. Kenny helped Mrs. Kinstley stand up and walked her to a couch downstairs. Mrs. Kinstley complained of blurry vision in her right eye, but initially declined medical attention. The police called an ambulance and Mrs. Kinstley was taken to San Francisco General Hospital. [Kenny Ex. A, Incident Report at 6-7].

## LEGAL STANDARDS

**A.    Summary Judgment.**

A principal purpose of the summary judgment procedure is to identify and dispose of factually unsupported claims. *Celotex v. Catrett*, 477 U.S. 317, 323-24 (1986). Summary judgment is proper when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). An issue is "genuine" only if there is sufficient evidence for a reasonable fact finder to find for the non-moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248-249 (1986). An issue is "material" if the fact may affect the outcome of the case. *Id.* at 249. "In considering a motion for summary judgment, the court may not weigh the evidence or make credibility determinations, and is required to draw all inferences in a light most favorable to the non-moving party." *Freeman v. Arpaio*, 125 F.3d 732, 735 (9th Cir. 1997).

The party moving for summary judgment has no burden to produce any evidence on

elements of a claim on which the non-moving party will bear the burden of trial, but can merely point out an absence of evidence to support any such element. *Celotex*, 477 U.S. at 322-23; *Maffei v. Northern Ins. Co. of New York*, 12 F.3d 892, 899 (9th Cir. 1993). Once the moving party points out the absence of evidence, then the nonmoving party must come forward with specific evidence to show there is a genuine issue for trial. *Celotex*, 477 U.S. at 322-23; *Maffei*, 12 F.3d at 899. The moving party is entitled to judgment as a matter of law if the non-moving party fails to make this showing. *Celotex*, 477 U.S. at 323.

Summary judgment is not only proper if plaintiff fails to produce *any* evidence on an element of her case, but summary judgment is also proper if plaintiff fails to produce *sufficient* evidence on an element of her case. The Supreme Court has specifically held that summary judgment is proper against a party who "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. The mere existence of a "scintilla" of evidence in support of the non-moving party's position is not sufficient. The non-moving party has the burden of establishing sufficient evidence on each element of his case so that the finder of fact could return a verdict for her. *Anderson*, 477 U.S. at 249.

## ANALYSIS

**I.    Section 1983 claim for excessive force.**

A claim that excessive force was used in the course of making an arrest is analyzed under the Fourth Amendment's standard of objective reasonableness. *Graham v. Connor*, 490 U.S. 386, 394 (1989); *Tennessee v. Garner*, 471 U.S. 1, 7-22,(1985); *Robinson v. Solano County*, 278 F.3d 1007, 1013-15 (9th Cir.2002) (en banc).   "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment. The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments-in circumstances that are tense, uncertain, and rapidly evolving-about the amount of force that is necessary in a particular situation." *Graham*, 490 U.S. at 396-97. The Court must pay "careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest

or attempting to evade arrest by flight." *Graham*, 490 U.S. at 397.

### A. Material disputed facts exist as to both resisting arrest and use of force.

The Court reviews whether Defendant Kenny used "objectively reasonable" force under the particular facts and circumstances of this case. According to Kenny, the Plaintiff actively resisted Kenny's attempt to escort her downstairs. Kinstley was handcuffed and Kenny guided her by the left arm out of the bedroom toward the stairs. The evidence is not clear whether Kenny was in front of Kinstley as they proceeded down the stairs, or behind her, and both inferences are possible. As they began their descent, Kenny testifies they "stopped abruptly" and Plaintiff "pulled back very hard," after which Kinstley fell forward and Kenny started to fall as well. Kenny let go of Kinstley by the third or fourth step, to avoid further injury to herself. Kenny does not state that she pushed or pulled Kinstley to overcome her resistance. On the contrary, Kenny describes Kinstley's own conduct – i.e., wrapping her leg around the open door and then letting go – as causing Kinstley to fall, and taking Kenny down along with her.

Kinstley's account is contradictory in three ways. First, in Kinstley's version of the arrest, she was charged by a female officer (presumably the Defendant), had a gun pointed at her, and was pulled down with great force to the floor before being handcuffed, naked. Second, she testifies that after Kenny dressed her and was leading her towards the staircase, she "felt the push on my back and tremendous falling forward." The only reasonable inference to draw from Plaintiff's evidence is that Kinstley was in front of Kenny as they walked to the stairs. Third, Kinstley testifies that she was pushed. Mr. Kinstley corroborates his wife's account by stating that he "witnessed the visceral force used by Defendant Dianne [sic] Kenny while pushing Maria Lee Kinstley towards the stairs."

Here, the Court cannot conclude, as a matter of law, that an alleged push or shove of a person who is descending stairs with her hands cuffed behind her back, while being deprived of her glasses, is objectively reasonable. The factual circumstances are disputed. Plaintiff testifies she was pushed hard from behind while Defendant testifies that Plaintiff's own conduct of resisting arrest caused her to lose her footing and fall down the stairs. "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, whether [the judge] is

ruling on a motion for summary judgment or for a directed verdict. The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [non-movant's] favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Whether Plaintiff was pushed or shoved by the arresting officer is material to the outcome of this litigation and is vigorously disputed. Whether Plaintiff actively resisted arrest sufficiently to warrant being pushed is also disputed. For these reasons, the Court must DENY Defendant's motion for summary judgment.

### B. Qualified Immunity.

The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). "Qualified immunity balances two important interests – the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably. The protection of qualified immunity applies regardless of whether the government official's error is 'a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact.' *Pearson v. Callahan*,129 S.Ct. 808, 815 (2009).

A court considering a claim of qualified immunity must determine whether the plaintiff has alleged the deprivation of an actual constitutional right and whether such right was clearly established such that it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted. *Pearson*, 129 S. Ct. at 818 (overruling the sequence of the two-part test that required determination of a deprivation first and then whether such right was clearly established, as required by *Saucier v. Katz*, 533 U.S. 194 (2001)). The court may exercise its discretion in deciding which prong to address first, in light of the particular circumstances of each case. *Id.* (noting that while the *Saucier* sequence is often appropriate and beneficial, it is no longer mandatory).

Here, Defendant contends that at the time of the incident it was not a constitutional violation and/or it was not clearly established that it was a constitutional violation for a peace officer to use force (even a push) to overcome a suspect's resistance while escorting that suspect

down the stairs of a home. [Reply at 5:16-19]. In determining whether the use of force in an arrest is objectively reasonable, the Court must pay careful attention to particular facts and circumstances, such as whether an arrestee is actively resisting arrest. *Graham*, 490 U.S. at 397. The facts regarding Plaintiff's "resistance" are far from undisputed, however, as are the facts regarding the use of force. Defendant states that Plaintiff resisted being escorted downstairs by halting their progress down the stairs when she had her leg around the doorjamb of the bathroom and was pulling back. Then, when Plaintiff's leg came loose, she fell forward. Plaintiff's sworn testimony is that she asked Defendant for her glasses and was refused, and as she was walked out of the bedroom by the Defendant, with her hands handcuffed behind her, the Defendant pushed her on the back toward the stairs, after which she "felt tremendous force falling forward," and landed at the bottom of the stairs with injuries. It is entirely unclear from the evidence that there was resistance, and that the disputed push was reasonable to overcome such resistance. The Court notes that Kinstley has sworn that not only was she restrained by handcuffs, but had been denied her glasses, and only moments before, had allegedly been thrown down to the ground, naked, by an armed officer who pointed her weapon at her.

      The caselaw cited by Defendant does not support a finding that qualified immunity applies. Defendant cites *Jimenez v. City of Costa Mesa*, 174 Fed. Appx. 399, 404 (9th Cir. 2006) for the proposition that an officer's push of a suspect on the stairway causing her to fall to one knee was reasonable under the circumstances and entitled the officer to qualified immunity on an excessive force claim. There are several reasons the *Jiminez* case is unpersuasive. First, the case may not be cited to or by the courts of this circuit except as provided by 9th Cir. R. 36-3, and no circumstance under R. 36-3(c) applies here. Second, even if could be cited, the case was decided on April 5, 2006, and Plaintiff's arrest occurred one year earlier, on April 29, 2005, it is not appropriate legal authority. The Court must determine whether or not, *at the time of Maria Lee Kinstley's arrest*, this sort of conduct by a police officer clearly established a constitutional violation. Third, the minimal facts in the opinion reveal that defendant Sonya Jimenez was pushed on the stairway of an El Torito restaurant, where the police were responding to a report of an altercation, and where they were substantially outnumbered as they tried to escort her quickly out of the restaurant. Nothing about the facts of *Jimenez* persuades the Court that the

push that Sonya Jimenez received is analogous to that which handcuffed Maria Lee Kinstley alleges she received in her home, when police forced her down stairs, with not support and no glasses.

The same is true for *Dunigan v. Noble*, 390 F.3d 486, 494 (6th Cir. 2005). In the first place, the facts in *Dunigan* were undisputed or taken in the light most favorable to the plaintiff. That is clearly not the case in the instant matter, where the material facts are sharply disputed. The Court upheld a grant of qualified immunity in *Dunigan* on the following facts: the police went to the home of a fugitive's mother to arrest the fugitive (Quincy). The situation was chaotic, with yelling and screaming, and the fugitive's mother was begging the officers not to hurt her son. As the officers entered her home, she was standing in front of them on the small landing. She knew her son was downstairs in the basement, and rather than move out of the officers' path, she remained close by on the kitchen steps. The defendant police officer Noble pushed her from one step to the next in the close confines of the stairwell and landing while in the presence of a police dog, and the mother of the fugitive claimed the force was excessive. The Court determined it was not. "Perhaps Officer Noble moved up the stairs past Plaintiff to cut off an escape route or get a view of his back side. Regardless, we will not second guess Officer Noble's actions. Officer Noble was confronted with a rapidly-evolving, highly-volatile situation which precluded the luxury of calm and reflective pre-response deliberation. Officer Noble had no opportunity to ponder or debate his reaction to the potentially explosive situation. Simply stated, Plaintiff's insistence on remaining in the middle of a chaotic, tense, and rapidly evolving situation posed a risk to herself, to Quincy, the officers seeking to arrest Quincy, and the other individuals present. Moreover, Plaintiff's presence in the midst of this situation interfered with Officer Noble's efforts to perform his duties. *Dunigan v. Noble*, 390 F.3d 486, 494 (6th Cir. 2004).

The facts and circumstances of *Dunigan* differ significantly enough from those in the instant case to make the case inapposite. There is no evidence that the situation at the Kinstley's home was "rapidly-evolving" or "highly volatile," nor that Mrs. Kinstley's alleged resistance posed a risk to herself or others. Of the several *Graham* factors that comprise the "calculus of reasonableness" – "the severity of the crime at issue, whether the suspect poses an immediate

threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight" – only resisting arrest is applicable here, and the facts are disputed as to whether there was any resistance at all to warrant the use of force, even a push. For these reasons, the Court finds that Defendant is not entitled to qualified immunity on Plaintiff's excessive force claim, and DENIES the motion for summary judgment.

## CONCLUSION

For the foregoing reasons, the Court DENIES Defendant's motion for summary judgment on excessive force and DENIES the motion for summary judgment on qualified immunity grounds.

IT IS SO ORDERED.

DATED: 7/27/09

*Saundra B Armstrong*
HON. SAUNDRA B. ARMSTRONG
United States District Judge